### Samuel Spencer v. Killington, Ltd., et al.

[702 A.2d 35]

No. 95-327

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed March 14, 1997

Motion for Reargument Denied as Untimely Filed April 23, 1997

Motion for Reargument Denied September 18, 1997

*R. Allan Paul, Robert S. DiPalma* and *April Shafer Johnson* of *Paul, Frank & Collins, Inc.*, Burlington, for Plaintiff-Appellant.

*Allan R. Keyes* and *John J. Zawistoski* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Defendants-Appellees Killington, Ltd. and Miller.

*William D. Cohen* and *Shannon A. Bertrand* of *Reiber, Kenlan, Schwiebert, Hall & Facey, P.C.*, Rutland, for Defendant-Appellee Killington Ski Club.

**Johnson, J.** Plaintiff, who was injured when he collided with a post during an amateur ski race, appeals the superior court's order granting summary judgment to defendants, the ski area and its agents, based on releases he signed. We conclude that the releases were void as contrary to public policy, and reverse.

Plaintiff, an experienced skier, purchased a pass at Killington Ski Area for the 1990-1991 season, as he had for several previous seasons. To obtain the pass, plaintiff signed a document that released Killington and its employees and agents from all liability for any injuries resulting from the ski area's negligence. Similar release language was included on the back of the season pass signed and worn by pass holders, including plaintiff.

During the 1990-91 season, plaintiff also participated in an amateur "Ski Bum" race series held at Killington Ski Area. The recreational races were open to persons of all skiing abilities, except that skiers with collegiate or professional racing experience were barred from the competition. On January 16, 1991, after completing the second race in the competition, plaintiff signed an entry form for the race series and paid an entry fee to Killington Ski Club. The back of the entry form included language releasing Killington and its employees and agents from any liability for personal injury resulting from Killington's usual activities.

On March 6, 1991, as he was completing another race in the series, plaintiff was seriously injured when he struck a wooden post marking the finish line of the race course. Plaintiff sued Killington, Ltd., its employee Steven Miller, and the Killington Ski Club, alleging that defendants negligently designed and erected the race course by (1) installing permanent posts at the finish line, (2) laying out the course so that competitors were guided into one of the posts, (3) setting the last gate too close to the posts, and (4) failing to provide adequate padding for the posts. Following the parties' submission of various motions, memoranda, and affidavits, the superior court granted summary judgment to defendants, ruling that the agreements plaintiff signed unambiguously released defendants from liability for injuries resulting from their negligence. Further, the court ruled that no special relationship existed between the parties, and that public policy did not require invalidation of the releases.

In his original brief on appeal, plaintiff argued that the superior court erred by granting defendants summary judgment because there were material facts in dispute as to (1) whether the language of the releases and the circumstances surrounding plaintiff's signing of

the releases apprised plaintiff that he was releasing defendants from liability for any injuries caused by their negligence, and (2) whether the documents released Miller or the Killington Ski Club from liability. On September 8, 1995, the same day Killington filed its responsive brief, this Court issued *Dalury v. S-K-I, Ltd.*, 164 Vt. 329, 330, 670 A.2d 795, 796 (1995), in which we held that an exculpatory agreement signed by season pass holders and relieving a ski area of all liability for injuries resulting from the ski area's negligence was void as contrary to public policy. The parties then filed supplemental briefs concerning the applicability of *Dalury* to this appeal.

As a preliminary matter, we reject Killington's argument that plaintiff waived his public policy argument on appeal by failing to raise it during the trial court proceedings. We have often stated that "[w]e will not reverse a lower court when a party's failure to raise some matter below denied the court an opportunity to consider it." *Duke v. Duke*, 140 Vt. 543, 545, 442 A.2d 460, 462 (1982). Here, however, the public policy issue was addressed, albeit briefly, and rejected by the superior court. In its motion for summary judgment, Killington argued that "[p]ublic policy is not concerned with a person's decision to go ski racing." Plaintiff responded, in part, by arguing that contractual exclusions of negligence liability are disfavored and must be strictly construed. The superior court expressly determined that "no public policy exists which should invalidate the waivers." In short, although the public policy issue was not debated or considered in depth by the parties or the trial court, it was raised and ruled on, and thus we may consider plaintiff's claim of error on appeal.

We now turn to the merits of the public policy issue, which is dispositive of the appeal. Acknowledging our holding in *Dalury*, Killington concedes that its season pass releases are void, but contends that *Dalury* does not preclude enforcement of the race registration release plaintiff signed. According to defendants, *Dalury* does not control here because this case, like *Douglass v. Skiing Standards, Inc.*, 142 Vt. 634, 459 A.2d 97 (1983), involves ski racing rather than recreational skiing.

The plaintiff in *Douglass* was a professional skier injured during a professional skiing competition. As a condition to entry into the competition, the plaintiff had been required to sign an agreement releasing the defendants from liability for any injuries he might sustain as the result of his participation in the competition. We held that notwithstanding the absence of the word "negligence" in the

release, the terms of the exculpatory agreement unambiguously demonstrated the parties' intent that the defendants were to be held harmless for injuries to the plaintiff caused by the defendants' negligence. *Id.* at 636-37, 459 A.2d at 98-99. The issue of whether the release violated public policy was neither raised by the parties on appeal nor addressed by this Court. See *Dalury*, 164 Vt. at 331 n.1, 670 A.2d at 797 n.1 (noting that *Douglass* upheld release signed by participant in freestyle skiing competition based on clarity of language rather than public policy, and declining to address whether such releases are void as contrary to public policy).

Public policy was at issue in *Dalury*, however. In that case, notwithstanding our acknowledgement that the ski industry does not provide an "essential public service," we struck down as contrary to public policy exculpatory agreements requiring season pass holders to release ski areas from liability for injuries caused by the ski areas' negligence. See *Dalury*, 164 Vt. at 330, 335, 670 A.2d at 796, 799. In arriving at this decision, we considered, among other factors, that (1) the ski area operated a facility open to the general public, (2) the ski area advertised and invited persons of every level of skiing ability onto its premises, (3) the ski area, and not recreational skiers, had the expertise and opportunity to foresee and control hazards and to guard against the negligence of its employees and agents, (4) the ski area was in a better position to insure against the risks of its own negligence and spread the cost of the insurance among its customers, and (5) if ski areas were permitted to obtain broad waivers of their liability, incentives for them to manage risks would be removed, with the public bearing the cost.

Killington argues that setting courses for local "Ski Bum" races is neither a service of great importance to the public nor a matter of practical necessity for any members of the public. Addressing the various factors set forth in *Dalury*, Killington states that there is no evidence in the summary judgment record that (1) defendants invited the general public to participate in the "Ski Bum" race series, (2) a substantial number of people participate in the event, (3) the racers cannot inspect or influence the course layout, (4) Killington is able to obtain liability insurance to cover such events, (5) members of the public cannot obtain insurance that would cover them for injuries incurred while participating in amateur ski racing, or (6) safety of these events would improve if racers were told that the ski area would assume responsibility for its own negligence.

The Killington Ski Club adds that *Dalury*'s public policy concerns are far less compelling here because (1) plaintiff had the opportunity

to view the layout of the course, which was obvious and open, (2) ski racing is not a necessity, (3) the race series is not a business suitable for public regulation, and (4) persons entering competitions know that they will be pushing themselves to the limit, thereby creating greater risks than if they were merely participating in recreational skiing. In the Club's view, if we were to invalidate the ski competition release based on public policy, we would discourage citizen participation in amateur competitions by dissuading people from organizing or administering such events for fear of incurring liability for the inevitable injuries that would result.

■ We conclude that the public policy concerns that formed the basis for our holding in *Dalury* apply with equal force under the facts and circumstances of this case. 164 Vt. at 333-34, 670 A.2d at 798 (ultimately, determination of what constitutes public interest must be made considering totality of circumstances in any given case against backdrop of societal expectations). The Club's arguments concerning the nature of recreational ski racing are similar to the arguments we rejected in *Dalury*. Moreover, the factual distinctions between *Dalury* and this case cited by defendants are minor compared to the obvious similarities.

For instance, it is undisputed that the recreational race series in this case was open to the general public, particularly persons with limited or no experience in competitive skiing; indeed, skiers with collegiate or professional racing experience were barred from the races. Cf. *id.* at 334, 670 A.2d at 799 (pointing out that ski area was open to members of public with every level of skiing ability). As in *Dalury*, defendants, not the recreational skiers participating in the races, had the expertise and opportunity to maintain and inspect their premises, to foresee and control hazards, to train their employees in risk management, to guard against the negligence of their agents and employees, and to insure against the risks and spread the increased cost of insurance among race participants or all skiing customers. See *id.* at 335, 670 A.2d at 799. Our statement in *Dalury* that "[i]f defendants were permitted to obtain broad waivers of their liability, an important incentive for ski areas to manage risk would be removed, with the public bearing the cost of the resulting injuries" is no less true here. *Id.*

Like other ski areas, Killington has a race course open to members of the general public who ski at its facility. Given our analysis in *Dalury*, Killington could not require recreational skiers to sign releases barring them from suing Killington for injuries incurred on

the public race course as the result of Killington's negligence. Such exculpatory agreements are void, whether the ski area uses them to avert suits by recreational skiers testing themselves on the ski area's public race course, or, as here, by recreational skiers participating in an amateur race controlled by and held at the ski area. In short, we see no salient distinctions between this case and *Dalury*.

The dissent, on the other hand, does find a significant distinction between recreational skiers competing in a ski area's amateur race series and recreational skiers skiing the ski area's trails or public race courses outside a competition. But in making this distinction, the dissent overstates the scope of our holding. We have not, as the dissent suggests, required race promoters to eliminate all the hazards inherent to ski racing or otherwise face liability for any injuries that result from those inherent risks. To the contrary, "a person who takes part in any sport accepts as a matter of law the dangers that inhere therein insofar as they are obvious and necessary." 12 V.S.A. § 1037. Assumption of risk remains as a defense.

Rather than requiring race promoters to eliminate all inherent hazards, we are simply allowing plaintiffs the opportunity to show that a ski area's *negligence* caused their injuries. The dissent would allow ski areas to escape liability by requiring recreational skiers to waive their right to sue for injuries resulting from the ski areas' negligence, not from risks inherent to the sport. Thus, for example, if a racer were injured upon striking a shovel accidently left on the course by race promoters, the release signed by the racer would bar suit against the promoters. Our opinion does not suggest that defendants were negligent or even that plaintiff has made out a prima facie case of their negligence; rather, we hold only that the releases plaintiff signed are void as contrary to public policy, and thus the trial court erred by granting defendants summary judgment based on the releases.

*Reversed and remanded.*

**Allen, C.J.,** dissenting. I cannot agree that the outcome of this case is governed by our holding in *Dalury v. S-K-I, Ltd.*, 164 Vt. 329, 670 A.2d 795 (1995). There we stated that the major public policy implications were those underlying the law of premises liability and held that the defendants, owners of a ski area, and not recreational skiers, have the expertise to foresee and control hazards and eliminate risks of harm. *Id.* at 335, 670 A.2d at 799. We reaffirmed that the operator of a ski area is obligated to prepare and maintain its slopes

in a reasonably safe condition for skiing by members of the general public engaged in recreational skiing. The controlling factual distinction between this case and *Dalury* is that participants in a "ski bum" race or any other race know that they will be skiing challenging courses artificially created to make the descent difficult. The object is to get from the start to the finish in the shortest possible time and to go "flat out" in order to do so. Danger of injury is inherent in the activity. Racers, whether amateur or professional, want the challenge that implicitly requires the creation, not the elimination, of hazards. For some, the descent may be too steep, the gates too closely spaced, the course too icy or too rutted, but to require the promoter to eliminate such hazards is to eliminate the challenges the racers seek. There is a significant difference between the expectations of the general public, which has a right to assume reasonable care on the part of the ski area operator, and a ski racer who consciously undertakes risks that he or she knows may strain or exceed the tolerance of any safety system.

We stated in *Dalury* that the social interest inherent in operating a business that courts the public, like a ski area, outweighs the interest of the business in shielding itself from liability for ordinary negligence. The reason given for replacing the "essential nature of the service" criterion, see *Tunkl v. Regents of Univ. of Cal.*, 383 P.2d 441, 445-46 (Cal. 1963), with the "legitimate public interest" test was that

> thousands of people buy lift tickets every day throughout the season. Thousands of people ride lifts, buy services, and ski the trails. Each ticket sale may be, for some purposes, a purely private transaction. But when a substantial number of such sales take[s] place as a result of the seller's general invitation to the public to utilize the facilities and services in question, a legitimate public interest arises.

*Dalury*, 164 Vt. at 334, 670 A.2d at 799. Nowhere in *Dalury* did we suggest that those who choose to undertake particularly risky activities may not validly waive their rights to sue the sponsor for ordinary negligence. We went to the outer limit to hold that skiing implicates a legitimate public interest. But see *Szczotka v. Snowridge, Inc.*, 869 F. Supp. 247, 251 (D. Vt. 1994) (exculpatory agreements for ski resorts do not affect the public interest); *Bauer v. Aspen Highlands Skiing Corp.*, 788 F. Supp. 472, 474 (D. Colo. 1992) (skiing by definition is neither matter of great public importance nor matter

of practical necessity). The majority holding now goes beyond a reasonable limit.

There is a segment of the population that engages in activities which by nature are hazardous or ultra-hazardous. The danger produces the thrill and is the motivation for the undertaking. Bungee jumping, parachuting, river rafting, scuba diving, ski racing, hang gliding are all activities involving varying degrees of risk. The owners of the lands or chattels that are used to facilitate these activities should be permitted to allocate the risk of harm. In short, a ski bum race is not an activity thought to be suitable for public regulation, a service of great importance to the public, or a matter of practical necessity for any member of the public. I would affirm the grant of summary judgment on the negligence claims. I am authorized to state that Justice Dooley joins in this dissent.

## On Motion for Reargument

Killington Ltd. and Steven Miller (hereinafter Killington) contend that the above-titled case should be reargued and remanded for development of a full factual record because this Court (1) mistakenly assumed that the "Ski Bum" race series was open to the general public, and (2) overlooked the fact that Killington did not charge either plaintiff or the Killington Ski Club for providing the site and assistance that made the race series possible. According to Killington, a full exploration of these facts is necessary because they are material to the "totality of the circumstances" and "societal expectations" regarding the enforceability of the release.

Two members of the Court would grant the motion for reargument, even though Killington merely restates arguments and facts considered and rejected in the Court's opinion. In its supplemental brief and at oral argument before we decided this case, Killington argued that the summary judgment record was insufficient for this Court to determine that *Dalury v. S-K-I, Ltd.*, 164 Vt. 329, 670 A.2d 795 (1995), required invalidation of the relevant releases. Killington contended, as it does again here, that it did not *invite* the general public, by advertisement or otherwise, to participate in the Ski Club's "Ski Bum" race series. In support of its claim that there are disputed facts as to whether the race was *open* to the public, Killington recites the same facts that it offered at oral argument. It states that approximately 100 local people organized and promoted the series for fun, and that although Killington provided the site, the employees to lay

out the course, the equipment, and the ski passes, it did not directly profit from the activity. None of these facts, as represented by Killington, suggest that the "Ski Bum" series was not *open* to the general public. To the contrary, it is undisputed that the race series was open to any and all members of the general public except for those with significant racing experience. Indeed, the entry form/ advertisement for the series stated that "V.A.R.A., COLLEGIATE & PROFESSIONAL RACE COMPETITORS *ARE NOT PERMIT-TED* to participate in this race series."

█ Moreover, the fact that Killington did not directly profit from the race series is not a material fact regarding the enforceability of the release. As noted, Killington conceded that it provided the site, the employees to lay out the course, the equipment, and the ski passes. One way or another, the race participants paid to be on Killington's mountain, which was open for a wide variety of general recreational activities that included the race series. As it stated in its original brief, Killington requires all racers to have a lift ticket or a pass in order to use its lifts. Regardless of whether Killington profited directly from the series, it profited indirectly from having general recreational ski events such as this on its premises. See Restatement (Second) of Torts § 496B, comment g (1965) (those charged with duty of public service may be liable even if compensation is received indirectly or from sources other than plaintiff). Under *Dalury*, 164 Vt. at 334-35, 670 A.2d at 799, Killington owes a duty to the general public skiing on its premises. In this case, plaintiff alleged that Killington employees negligently laid out the "Ski Bum" race course on Killington property. And as Killington states in its own brief, when plaintiff was racing, he was "skiing at the area," and he was allegedly injured as the result of "conditions of the premises."

In short, Killington's motion for reargument is nothing more than a rehash of arguments and facts considered and rejected in this Court's opinion. Because Killington has failed to identify facts or points of law overlooked or misapprehended by this Court, its motion for reargument is denied.

**Dooley, J.,** dissenting. This case demonstrates the risk of rushing to judgment and deciding a case here on grounds for which there has been inadequate development below. *Dalury v. S-K-I, Ltd.* had not been decided when the summary judgment record was placed before the trial court. Indeed, the decision came out only after the initial briefs in this Court.

Killington, Ltd. and Steven Miller have moved for reargument on the ground that the facts upon which the majority decision is based are not undisputed and summary judgment is improper on the law announced in the opinion for the Court. Their main argument is with the statement in the opinion that "it is undisputed that the recreational race series in this case was open to the general public." In their motion for reargument defendants respond "[i]n fact the 'ski bum' series was not open to the general public." They point out that they have consistently stated that there is no support in the record for the fact the opinion found, and the opinion itself even acknowledged this statement. I agree that the parties should have an opportunity to make a factual record on this point.

Beyond the specific factual dispute, defendants argue that the opinion assumed that the relationship of the ski area, and its employee, to the race was such that the release is ineffective. If Killington's version of the facts is accurate, I fear that all we have accomplished is that a ski area will never again donate use of its terrain to a ski club again. Further factual development would expose whether my fear is warranted.

I cannot accept the majority's response to Killington's request. Over and over in its motion, Killington has stated that the ski bum race is not open to the public, and it wants an opportunity to prove that fact. The majority discusses the request essentially by saying that none of the facts support Killington's claim. The response is circular, denying Killington an opportunity to prove a fact on the basis that it has not already done so. I think it is particularly unfair to deny this proof opportunity when no party knew that the fact was significant when the factual record was initially developed. Moreover, the trial court's burden to resolve this issue is slight, and if the facts turn out as the majority believes, the litigation will be set back only minimally.

I do not ordinarily vote for reargument of matters resolved by opinions with which I disagreed. I do not war with the now-resolved conclusion that *Dalury v. S-K-I, Ltd.*, 164 Vt. 329, 670 A.2d 795 (1995), now applies to recreational ski races generally open to the public. I do not think, however, that these defendants had a full and fair opportunity to show that even under the law announced by the majority, the release is effective. Accordingly, I dissent from the denial of reargument.

I am authorized to state that Chief Justice Allen joins this dissent.