**In re C.H. and M.H.**

[749 A.2d 20]

No. 99-352

January 14, 2000. In this appeal from a termination of parental rights (TPR), father argues that the Windsor Family Court erred in terminating his parental rights without a finding that he is an unfit parent. We determine that father failed to preserve his unfitness claim, and affirm the family court's decision that termination is in the best interest of the children.

At the July 1999 TPR hearing, the family court found the following pertinent facts. Father was living with, but not married to, mother when the children, C.H. and M.H., were born. He was not living with mother or the children in September 1996, when mother attempted to smother C.H. with a pillow. As a result of mother's actions, the children were placed in custody with SRS on an emergency basis.* At a merits hearing in November 1996, the family court found that both children were in need of care and supervision — which neither parent contested — and the children were placed in foster care, where they have remained throughout this case. At a July 1997 disposition hearing, the court granted custody to SRS based on the parties' stipulation.

Father was adjudicated a sex offender at the age of thirteen. He received treatment but did not complete his therapy program. As a part of the case plan for C.H. and M.H., it was recommended that father undergo a penile plethysmograph to determine if he is still sexually aroused by children. However, this test never took place, due to circumstances beyond father's control.

SRS arranged a schedule to allow father to visit the children. Father visited the children on two occasions in two-and-one-half years. Father testified that he canceled scheduled visits due to conflicts with his work schedule. Father's parents visited the children on occasion. The SRS case plan required that father participate in parenting skills classes, but father never contacted SRS about these classes nor attended such classes. Father testified that he bought a house and remodeled it to accommodate the children in the event they moved in with him, and that his parents would care for the children while he was at work.

---

*Father married mother subsequent to SRS obtaining custody of the children.

The court found that the foster mother has a degree in early childhood education and works as a kindergarten assistant at the Perkinsville School. She has taken the children to all SRS appointments and seen to their medical and dental needs throughout the custody period. C.H.'s behavioral and emotional problems, most of which stemmed from the attempted smothering, have improved during the time she has lived with the foster parents. The foster parents have expressed a willingness to adopt the children if they become available for adoption, and the children call them "Mom" and "Dad." SRS case workers testified that the children have bonded with the foster mother.

The court concluded that the State had met its burden of proving, by clear and convincing evidence, that (1) there had been a substantial change in material circumstances, and (2) termination is in the best interests of the children under 33 V.S.A. § 5540. Specifically, the court found that: because father visited the children only twice during a thirty-one month period, the children had no significant relationship with him, but had bonded with their foster parents and have a significant relationship with them; the children have adjusted to the environment provided by their foster home; because of the lack of significant contact between the children and their father and the positive interaction between C.H., M.H., and their foster parents, it was considered most unlikely that father would be able to resume parental duties within a reasonable period of time; and, finally, father had played no constructive role in the children's welfare, as they hardly know him and he had no significant part in their lives or development.

The court ordered the termination of father and mother's parental rights and transferred legal custody, guardianship, and residual parental rights to SRS. This appeal followed.

Father argues on appeal that the family court erred because his parental rights could not constitutionally or statutorily be terminated without a finding that he is an unfit parent. The State counters that father's July 1997 stipulation to the initial disposition placing custody in SRS essentially constituted a finding of his unfitness and that the SRS was not required to show his unfitness at the July 1999 TPR hearing.

We decline to reach father's contention because he waived his unfitness argument by failing to raise it at any point during the family court proceedings. "We have often stated that '[w]e will not reverse a lower court when a party's failure to raise some matter below denied the court an opportunity to consider it.'" *Spencer v. Killington, Ltd.*, 167 Vt. 137, 140, 702 A.2d 35, 36 (1997) (quoting *Duke v. Duke*, 140 Vt. 543, 545, 442 A.2d 460, 462 (1982)). We will not consider any matter raised for the first time on appellate review. See *Wilk Paving, Inc. v. Southworth-Milton, Inc.*, 162 Vt. 552, 558, 649 A.2d 778, 783 (1994); *Lanphere v. Beede*, 141 Vt. 126, 129, 446 A.2d 340, 341 (1982) ("Contentions not raised or fairly presented to the trial court are not preserved for appeal.").

We observe, however, that in *In re J.H.*, 156 Vt. 66, 587 A.2d 1009 (1991), the trial court had accepted the appellant-mother's argument that "because she was not adjudged unfit at the original disposition hearing, in order to retain custody SRS was required to show that she was unfit at the review hearing." *Id.* at 71, 587 A.2d at 1012. We described this reasoning as "flawed," noting that "[t]he mother was a party to the initial disposition hearing and stipulated to SRS custody. She may not now complain that no finding of unfitness was made regarding her." *Id.* In the instant case, father candidly recognizes the relevance of *In re J.H.* and invites us to overrule it. Even assuming we were inclined to accept his invitation, father's failure to raise the issue below requires us to decline.

Nevertheless, we still review the termination of parental rights to "safeguard[]

from arbitrary or erroneous state action by 'a general policy that total termination of parental rights will not be ordered in the first instance if there is a reasonable possibility that the causes and conditions which led to the filing of the petition can be remedied and the family restored within a reasonable time.'" *In re J.B.*, 167 Vt. 637, 639, 712 A.2d 895, 897 (1998) (mem.) (quoting *In re D.R.*, 136 Vt. 478, 481, 392 A.2d 951, 953 (1978)).

Although father attempts to characterize the decision below as one that relies solely on the children's bond with their "psychological parents," see *In re J. & J.W.*, 134 Vt. 480, 485, 365 A.2d 521, 524 (1976), this is not a case in which the court ignored its obligation to consider the statutory factors of 33 V.S.A. § 5540. The court specifically addressed the lodestar criterion of § 5540(3):

> Because of the lack of significant contact between C.H., M.H., and their father, and, because of the positive interaction of those children with their foster parents, it is considered most unlikely that [father] will be able to resume parental duties within a reasonable period of time.

Indeed, the court noted that § 5540(3) is "[p]erhaps the most significant statutory factor" to be weighed in the termination of parental rights. See *In re M.M.*, 159 Vt. 517, 523, 621 A.2d 1276, 1280 (1993) ("The most critical factor in determining a child's best interests is whether the parent will be able to resume her parental duties within a reasonable time.").

Father argues that findings that he visited the children only twice in two-and-one-half years and that he did not participate in parenting classes as required by the case plan are not sufficient to support the court's conclusion that it is "most unlikely that [father] will be able to resume parental duties within a reasonable period of time."

The family court's conclusions will be upheld if they are supported by the findings, see *In re J.B.*, 167 Vt. at 639, 712 A.2d at 897, and we will uphold the findings unless they are clearly erroneous. See *id.* The court's conclusion that the State has shown by clear and convincing evidence that termination is in the best interests of the children is supported by findings, and, therefore, we will not disturb the court's termination of father's parental rights.

*Affirmed.*

Motion for reargument denied February 15, 2000.