*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-287

DECEMBER TERM, 2014

| | |
|---|---|
| In re B.R., Juvenile | }    APPEALED FROM: |
| | } |
| | }    Superior Court, Franklin Unit, |
| | }    Family Division |
| | } |
| | }    DOCKET NO. 52-3-13 Frjv |

Trial Judge: Kevin Griffin

In the above-entitled cause, the Clerk will enter:

Father appeals from a disposition order of the superior court, family division. He contends: (1) the disposition hearing procedure violated his due process and equal protection rights; and (2) the court erred in failing to return B.R. to father's custody. We affirm.

This is father's second appeal in this matter. In In re B.R., 2014 VT 37, we affirmed a child-in-need-of-supervision (CHINS) adjudication as to B.R. (d/o/b 11/15/12). The material facts set forth in our first opinion may be summarized as follows. B.R. was born in November 2012, and was taken into the custody of the Department for Children and Families (DCF) in March 2013 based on mother's long history of drug use and her allegations, following an arrest for driving under the influence, that drugs in her possession belonged to father and that father had taken the child to a "meth house" in New York. Id. ¶ 2. Both parents stipulated to a temporary-care order transferring custody to DCF, and mother subsequently stipulated to a CHINS adjudication based on an inability to adequately care for the child due to her long-term substance abuse. Id. ¶¶ 3-4. After some testimony that established that the child was living with both parents at the time DCF first took custody, the trial court found that the child was a CHINS based on mother's admission that she was unable to adequately care for B.R. due to long-term substance abuse and her failure to access and engage in services to address her drug use and its impact on B.R. We affirmed, rejecting father's claim that the evidence was insufficient to establish that B.R. was a CHINS. Id. ¶¶ 12, 27.

While father's appeal was pending, the case proceeded to disposition, where the State sought termination of parental rights. Mother voluntarily relinquished her rights, but father opposed the petition. Following a hearing, the trial court issued a written decision in April 2014, denying the State's petition. Id. ¶ 27 n.4. The court found that termination was premature and that father should be afforded additional time to continue with DCF services and develop the ability to safely parent the child, but cautioned that termination may be appropriate in three to six months if father failed to make adequate progress.

In June 2014, DCF filed an updated case plan to reflect concurrent goals of reunification with father or adoption, if father failed to complete recommended services. A disposition hearing was held later that month. Father objected to a number of provisions in the plan, and the court ultimately narrowed the requirement that he release all of his medical records and struck the requirement that he attend individual mental-health counseling. Father's two DCF case

workers testified, as well as father himself. He acknowledged testing positive for marijuana and an opiate drug, and missing other drug screens and DCF appointments. In July 2014, the court issued a written ruling.

In brief, the court found that, since the TPR ruling, father had failed to document his prescribed medications, failed to fully cooperate in providing drug-screening samples, and stopped participating in intensive family services. He had missed meetings with DCF workers, thereby delaying the implementation of an expanded plan of supervised contact, and he failed to execute medical releases. The court concluded that, given father's established history of drug abuse, he would have to more fully demonstrate compliance with drug counseling and testing before he could safely parent B.R. Accordingly, with the modifications noted, the trial court approved the case plan, and concluded that continued DCF custody of B.R. was in the child's best interests. This appeal followed.

Our review on appeal is limited. "Absent an abuse of discretion the findings and disposition order of the [] court must stand." In re L.T., 149 Vt. 473, 476 (1988). We will affirm the court's findings unless clearly erroneous, and its conclusions if reasonably supported by the findings. In re R.W., 2011 VT 124, ¶15, 191 Vt. 108.

Father raises several claims that the disposition statute and hearing procedures violate due process and equal protection of the law The record does not show, however, that any of the claims was raised below. Accordingly, they were not properly preserved for review on appeal, and we will not consider them. See In re C.H. & M.H., 170 Vt. 603, 604 (2000) (mem.) ("We will not consider any matter raised for the first time on appellate review."); In re D.C. & D.C., 157 Vt. 659, 660 (1991) (mem.) (noting that "[i]ssues, including those with constitutional dimensions, are waived by parties unless raised" initially at trial).[1]

Father's remaining claims focus on his contention that the trial court erred in declining to return B.R. to father's custody. He asserts in this regard that the court could not validly find that he failed to comply with provisions of the case plan requiring him to provide samples, complete drug counseling, and provide certain medical releases because there was no case plan in this case until a few weeks before the hearing in late June 2014. No objection of this nature was raised at the hearing below, however, and the argument was therefore waived. In re C.H. & M.H., 170 Vt. at 604.

For the sake of accuracy and understanding, however, it is important to note that, in fact, father was the subject of a disposition plan filed with the court on October 22, 2013, well before the updated plan submitted in June 2014. The October 2013 plan noted that father was not only B.R.'s biological parent but also had played a caretaking role for mother's two older children by other fathers; that in this capacity he had been sporadically engaged in DCF-prescribed services focused principally on substance-abuse testing and treatment, domestic-violence programming, and parent education, and that he had consistently tested positive for drugs and alcohol, failed to

---

[1] In his reply brief submitted after oral argument before this Court, father claims that he raised the constitutional issues at the disposition hearing, citing his assertion that "without any merits finding concerning the father . . . there's no basis for a court order keeping B.R. from his care; in fact, that current order is unlawful." This was not sufficient to raise the due process and equal protection claims argued in this appeal. See In re D.G., 2006 VT 60, ¶ 6, 180 Vt. 577 (mem.) (to preserve issue for review on appeal, party must raise it with specificity and clarity). Nor do we agree with father's assertion that this was a "jurisdictional" challenge that could be raised at any time.

2

pursue drug treatment, failed to consistently attend scheduled visits with B.R., and failed to follow-through in parenting education. A follow-up case plan filed with the court on March 14, 2014 was to the same effect, noting father's continued positive drug tests, and failure to consistently attend scheduled visits with B.R. or engage in parenting classes.

The revised plan, completed in early June 2014, contained an amended concurrent permanency goal of reunification or adoption, but otherwise kept in place the previous set of services and requirements, along with a few additional specific requirements, several of which the court narrowed or struck. Two DCF case workers testified at the hearing, one who had been working with father since July 2012, and the other since April 2014, shortly after the trial court's TPR decision. The latter testified that father had failed to provide certain requested documentation, failed to arrange for increased visitation as directed, and failed to document his prescribed medications until the disposition hearing. Additionally, the case worker testified, and the court found, that father had ceased participating in intensive substance-abuse counseling at the end of May 2014, and had not fully cooperated in providing screening samples. Thus, the record amply supports the court's findings.

Father also asserts that that the "the state's failure to adjudicate father at merits should preclude the court from ordering" him to disposition and requiring him to comply with a plan of services. Father is essentially seeking to revisit the CHINS adjudication, however, which this Court affirmed, finding sufficient evidence that B.R. was without proper parental care, and ruling that the matter should properly proceed to disposition. In re B.R., 2014 VT 37, ¶ 23. Accordingly, we find no error.

Finally, father contends that there was "no determination that B.R.'s father cannot care for him at this time," and no evidence to support such a determination. As noted, however, the court expressly found that father was not ready to provide safe and independent care for the child, and the evidence of father's continued failure to complete all required drug screens, remain drug free, and attend scheduled appointments with DCF supported the finding.[2] See In re D.C., 2012 VT 108, ¶ 26, 193 Vt. 101 (noting that "unfitness" is not a part of our "legal lexicon" and that no express finding using the term is required to support a custody or termination order). Accordingly, we discern no basis to disturb the judgment.

Affirmed.

BY THE COURT:

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice

---

[2] Father asserts, in passing, that the court's findings were almost all based on hearsay, but—as noted—father himself testified that he had missed drug screens, tested positive, and failed to attend appointments.